IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-03017-RBJ

GUSTAVSON & ASSOCIATES, LLC,

    Plaintiff,

v.

SKYLAND PETROLEUM PTY LTD f/k/a Skyland Petroleum Limited ACN 072 350 817,
SKYLAND PETROLEUM HOLDINGS LTD, f/k/a Skyland Petroleum Group Limited,
SKYLAND PETROLEUM GROUP LIMITED ARBN 613928671,
SKYLAND SERVICES LLC, and
DOMENIC VINCENT MARTINO, an individual,

    Defendants.

## ORDER

Two motions are pending. Plaintiff moves to strike the notice of removal filed by three of the five listed defendants. The defendants move to dismiss for lack of personal jurisdiction. Both motions are denied.

### BACKGROUND

This background is taken from plaintiff's amended complaint and its exhibits. I will accept plaintiff's well-pleaded allegations of fact as true for present purposes except to the extent the actual documents attached as exhibits to the amended complaint correct or clarify the alleged facts.

    1.    The plaintiff, Gustavson Associates, LLC, is an engineering and consulting company based in Boulder, Colorado.

2. On April 13, 2016 "Skyland Petroleum Limited (previously known as MUI Corporation Limited) ('SPL' or the 'Company')"issued a press release announcing the completion of its acquisition of Skyland Petroleum Group Limited and its subsidiaries. ECF No. 10-13. The announcement indicated that the Company's board of directors henceforth would be Dr. David Robson, Chairman and Managing Director; Elizabeth Landles, Executive Director; and Mark Sarssam, Executive Director. It identified five Non-Executive Directors: Timothy Hargreaves, Piers Johnson, Domenic Martino, Raden Sukhyar, and Ghassan Zok. *Id.*

3. An organization chart, undated but, based on its content, apparently taken from a Skyland document at or after the foregoing announcement, shows "MUI Corporation Limited (to be renamed 'Skyland Petroleum Limited')" at the top of the chain; then Skyland Petroleum Group Limited (Cayman Islands) immediately under Skyland Petroleum Limited; and six entities, presumably subsidiaries of Skyland Petroleum Group Limited, under Skyland Petroleum Group Limited. One of those subsidiaries is Skyland Management Consultancies (Dubai, UAE), described in the chart as "Dubai staff." Another is Skyland Services Limited (Tajikistan), described as "Tajik staff." ECF No. 10-14.

4. On June 28, 2016 Gustavson entered into a "Professional Services Agreement" with "Skyland Petroleum," an entity with a business address in Dubai, U.A.E, and a billing address of Skyland Petroleum, P.O. Box 388, St. Peter Port, Guernsey GY1 3FG British Isles. ECF No. 10-1. Under this contract Gustavson agreed to evaluate certain asserts being considered for acquisition. The estimated fee for the work was $26,770 with a retainer of $10,000. In its amended complaint Gustavson refers to these assets as the "Fund Energy assets." ECF No. 6 at ¶11. Gustavson refers to this contract as the PSA 1 agreement or the PSA 1 contract.

5. On July 11, 2016 Gustavson entered into a second Professional Services Agreement with Skyland Petroleum for evaluation of assets being considered for acquisition. ECF No. 10-2. Plaintiff alleges that "Skyland had suspended further interest in the Fund Energy assets and requested Gustavson to shift its efforts towards evaluating the Mirninsky licenses in the same general area." ECF No. 6 at ¶13. Gustavson refers to this contract as the PSA 2 agreement or the PSA 2 contract. This contract has a stamp over the signature block which says "Skyland Petroleum Group," and underneath that in smaller letters the words "Skyland Management Consultants" and the Post Office Box address of the Dubai office on the first page of the contract.

6. Gustavson provided a report to Skyland Petroleum entitled Estimate of Reserves and Resources for the Mirninsky License Area, Located in Siberia. ECF Nos. 10-3 and 10-4 at 1-43. This report had a report date of October 12, 2016 and an effective date of January 1, 2017. Gustavson also provided an Addendum to the report with a report date of October 27, 2016 and an effective date of January 1, 2017. ECF No. 10-4 at 44-76.

7. On October 24, 2016 Skyland Petroleum Group Limited ARBN 613 928 671 ("SPGL") issued a press release stating that "it has successfully completed its due diligence on the Mirninsky License and that it could provide "an independent audited SPE-PMRS estimate reserves and contingent resources figures for the Mirninsky License" completed by Gustavson. This press release was headed by the logo Skyland Petroleum and was captioned "Skyland Petroleum – Acquisition Update on East Siberian Oil and Gas Asset." ECF No. 10-6. In a section entitled "Successful Continuation of Corporate Strategy," it quoted a comment from Dr. David Robson, Chairman and Managing Director, concerning the project. *Id.* at 3. In a section

entitled "About Skyland," the press release stated, "Skyland Petroleum Group Limited is an oil and gas exploration and production company listed on the Australian Securities Exchange ('ASX') and primarily focused on projects in Russia, Central Asia and the Caucasus." *Id*.

8. On November 2, 2016 SPGL issued another press release, this time providing "the prospective resource figures relating to the exploration potential within the Mirninsky License area located in the Sakha (Yakutia) Republic of the Russian Federation." ECF No. 10-7.

9. Gustavson alleges that the total charges for its services and work product pursuant to the PSA 1 and PSA 2 contracts totaled $174,410.95. ECF No. 6 at ¶16. However, Gustavson negotiated with "Skyland management" and reached an agreement upon a compromised amount of $110,000. *Id.* at ¶17.

10. On November 4, 2016 Gustavson sent an invoice for $110,000 to "Skyland Services Limited" at P.O. Box 144, St. Peter Port, Guernsey GY1 3HX. ECF No. 10-5. This invoice has never been paid.

11. On December 24, 2016 Dr. Robsen, the Chairman and Managing Director of SPGL, died.

12. On January 31, 2017 Edwin C. Moritz, President of Gustavson, sent a letter to Skyland Services Limited at P.O. Box 388, St. Peter Port, Guernsey GYI 3FG, requesting payment of the "overdue invoice" dated November 4, 2016. ECF No. 10-12.

13. On February 6, 2017 Mr. Moritz sent an email to Liz Landles of SPGL, noting that Gustavson had received no response to the invoice and letter he had sent to the Guernsey office and asking for a response at her earliest convenience. ECF No. 10-11. Ms. Landles forwarded the email to Domenic Martino. On February 7, 2017 Mr. Moritz sent Mr. Martino a

4

copy of the invoice Gustavson had sent to the Guernsey office. *Id.* Each of these emails indicated that the subject was "Gustavson work for Skyland."

14. On February 24, 2017 SPGL issued a press release announcing that on February 21, 2017 the majority of its board of directors agreed to remove Piers Johnson, Elizabeth Landles and Mark Sarssam as directors of the Company. ECF No. 10-15. The new board consisted of Domenic Martino, Timothy Hargreaves, Ghassan Zok, Raden Sukhyar and Marco Arosti. Domenic Martino was appointed as Interim CEO and Chairman of the Company.

15. On March 6, 2017 Mr. Moritz again emailed Ms. Landles, attaching another copy of the invoice, noting that it was for work on the Mirninsky licenses that were being evaluated by "Skyland," that the results were published on "Skyland's website," and that the invoice was approved by Mark Sarssam. He copied Mr. Martino and Mr. Sarssam. *Id*

16. On April 21, 2017 SPGL issued a press release entitled "Company Update and Placement" indicating that it is "reviewing its proposed acquisition of the East Siberia Oil and Gas asset following the death of its former Executive Chairman and Managing Director as well as a review of its current operations and financial position." ECF No. 10-10. The press release further stated that its review had noted irregularities, mostly through subsidiaries of Skyland Petroleum Holdings Limited, incorporated under Cayman law, OG-296850, which resulted in proceedings against three former directors of the latter entity: Elizabeth Landles, Mark Sarssam and Denise Lay. It added that SPGL and its existing board would "continue to provide disclosure on its restructuring plans and other matters." *Id.*

17. On June 8, 2017 Domenic Martino, a Director of SPGL, sent an email to Edwin C. Moritz of Gustavson. ECF No. 10-9. In his letter Mr. Martino states, among other things,

a. On December 28, 2016 Skyland Petroleum Group Limited, "incorporated under Cayman law OG-309802," announced the death of the Group's founder, Managing Director and Executive Chairman, Dr. David Robson.

b. During January and February 2017 the board and management of SPGL was restructured. New management commenced a review of SPGL's operations.

c. The review noted irregularities which had resulted in proceedings against former executive management.

d. Most of the irregularities had occurred through the subsidiaries of Skyland Petroleum Holdings Limited.

e. The directors of SPCL have "resolved to cease any financial assistance to Skyland Petroleum Holdings Limited and its subsidiaries.

f. Gustavson's contract[s] were entered into with Skyland Management Consultancies, a subsidiary of Skyland Petroleum Holdings Limited (formerly Skyland Petroleum Group Limited, incorporated under Cayman law, OG-296850).

g. Therefore, although SPGL values working with your firm, it will not honor the contract[s], and "contact should be made directly with the directors and management of that entity in respect of settlement of amounts outstanding."

18. Gustavson has submitted several emails between Mr. Moritz and Mr. Martino between February 2, 2016 and April 11, 2016, generally concerning SPGL's late payment of Gustavson invoices and Mr. Martino's efforts to assist Gustavson in obtaining payment. *See* ECF No. 10-8. In one email, dated February 2, 2016, Mr. Martino personally guaranteed payment of a Gustavson invoice in the amount of $20,000 for work described as an "Independent

Geologist Report." *Id.* at 1. ECF No. 10-8. None of these emails, however, appear to relate to the work for which the $110,000 payment amount was negotiated, billed, but not paid.

19. Gustavson alleges that "Skyland Petroleum Pty Ltd, f/k/a Skyland Petroleum Limited ACN 072 350 817, Skyland Petroleum Holdings Ltd., Skyland Petroleum Services LLC, as are all the Co-Defendants, are controlled by SPGL and/or Domenic Martino. ECF No. 6 at ¶29.

20. Gustavson alleges that SPGL and Domenic Martino have caused Skyland Petroleum Holdings Ltd., or its affiliates, its Cayman Island subsidiary, to become insolvent and have unable to pay their debts including "the Debt of Defendants to the Plaintiff." *Id.* at ¶30.

21. Gustavson alleges that Skyland Petroleum, Skyland Petroleum Group, Skyland Petroleum Pty Ltd, f/k/a Skyland Petroleum Limited CAN 072 350 817, Skyland Services LLC and Skyland Petroleum Holdings Ltd., are alter egos of SPGL and/or Domenic Martino. *Id.* at ¶32.

22. This lawsuit was filed in the District Court for Boulder County, Colorado. The Amended Complaint, now the operative pleading, was filed in that court on August 25, 2017. The Amended Complaint names five defendants: (a) Skyland Petroleum Pty Ltd f/k/a Skyland Petroleum Limited CAN 072 350 817; (b) Skyland Petroleum Holdings LTD a/k/a Skyland Petroleum Group Limited; (c) SPGL; (d) Skyland Services LLC; and (e) Domenic Vincent Martino.

23. Mr. Martino was served in Sydney, Australia on December 14, 2017. ECF No. 13. I do not file returns of service in the filed for Skyland Petroleum Pty Ltd f/k/a Skyland Petroleum Limited CAN 072 350 817 or SPGL in the file. Mr. Martino states that the legal

7

documents addressed Skyland Petroleum Pty Ltd f/k/a Skyland Petroleum Limited CAN 072 350 817] and SPGL were delivered to them by the Sheriff in Sydney, Australia on November 20, 2017. Martino Affidavit, ECF No. 23-1, at 3. In the Notice of Removal, however, those two corporate defendants stipulate that service on Mr. Martino accomplished service on them. ECF No. 1 at 3, ¶5. There is a return of service indicating that Skyland Services LLC was served buy service upon its registered agent in Wilmington, Delaware on December 26, 2017. ECF No. 24. Nothing has been filed by or on behalf of Skyland Services LLC as of the date of this order.

24. Plaintiff asserts 10 claims: (1) breach of contract – invoice; (2) quantum meruit – contract implied in law; (3) quantum meruit – contract implied in fact; (4) intentional interference with contract v. SPGL and Martino; (5) deceit based on fraud; (6) negligent misrepresentation or concealment; (7) Colorado Consumer Protection Act (CCPA); (8) civil conspiracy; (9) aiding and abetting; and (10) alter ego – veil piercing.

25. Plaintiff prays for the following relief: (a) compensatory and consequential damages jointly and severally against all defendants; (b) pre-judgment and post-judgment interest; (c) attorney's fees and costs; (d) punitive damages; (e) treble damages on the CCPA claim; and (f) a declaratory judgment piercing the corporate veil.

26. On December 14, 2017 the three defendants that had been served at that time removed the case to this Court, invoking federal jurisdiction on grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332. ECF No. 1.

**MOTIONS**

**A. Motion to Strike Notice of Removal [and to] Remand, ECF No. 15.**

Gustavson contends that defendants improperly removed the case because (1) not all defendants consented to removal; (2) the notice of removal was not properly served on Gustavson; and (3) the notice was not timely filed. I agree with the defendants that none of these procedural arguments has merit. *See* Response, ECF No. 23.

1. <u>Consent of all defendants</u>. 28 U.S.C. § 1446(b)(2)(A) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." Only three defendants had been properly joined and served when the case was removed – Skyland Petroleum Pty Ltd f/k/a Skyland Petroleum Limited CAN 072 350 817, SPGL and Mr. Martino. Each of them joined in the removal. *See* ECF No. 1.

If service upon Skyland Services LLC on December 26, 2017 was valid, as it appears to have been at least on the face of the return of service, then that defendant has not lost the right to move to remand. 28 U.S.C. § 1448. However, Skyland Services LLC has not to date done so (or responded in any way to the amended complaint), so at this point the purported service on it is not relevant to the removal.

2. Notice of filing. A removing defendant must give written notice of the filing of a notice of removal to the plaintiff "promptly after the filing of such notice." 28 U.S.C. § 1446(d). Our court records show that the notice of removal was electronically filed in this court at 10:22 p.m. on December 14, 2017. Plaintiff's counsel acknowledges that he learned of the removal on the morning of December 15, 2017. ECF No. 15 at 3. Defendants state that the notice of removal was filed in the Boulder District Court on December 15, 2017, and that the notice was

9

served on plaintiff by 1:20 p.m. on that date. Response, ECF No. 23, at 3. Plaintiff has not disputed these facts. The Court finds that defendants complied with the requirement of prompt notice.

      3. <u>Timeliness</u>. 28 U.S.C. § 1446(b) requires, as pertinent here, that the notice of removal "must be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . . ." Mr. Martino was served on November 14, 2017. *See* ECF Nos. 13. Plaintiff's inventive argument is that Australia is 24 hours ahead of Denver such that November 14 there is actually November 13 here. Thus, plaintiff posits, Mr. Martino was served on November 13, 2017 Denver time, making the filing of the notice of removal on December 14, 2017 Denver time one day late. *See* ECF No. 15 at 4. Unsurprisingly, plaintiff provides no authority for such a hyper technical manner of calculating 30 days, nor do I find it to be persuasive.

      Incidentally, plaintiff's 24-hour assumption is incorrect. I take judicial notice that as I write this order the time difference between Sydney, Australia and Denver, Colorado is 17 hours. In November 2014, when Sydney was on daylight savings time and Denver was on standard time, the difference would have been 19 hours. Either way, both cities are on the same day for at least five hours. One would need to know the exact time Mr. Martino was served at the Sheriff's Office in Sydney to know whether he was served on December 14 or December 13 Denver time. But, I find that the notice was timely filed regardless of the wrinkle involving time zones.

      Defendants make another argument based on 28 U.S.C. § 1446(b)(2)(C), which provides, "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-

10

served defendant did not previously initiate or consent to removal." According to Mr. Martino, Skyland Petroleum Pty Ltd f/k/a Skyland Petroleum Limited CAN 072 350 817, SPGL and SGPL did not receive copies of the initial pleading or other "legal documents" until they were delivered to them in Sydney, Australia by the Sheriff on November 20, 2017. Thus, they argue, their notice of removal was easily timely, and Mr. Martino could consent to the removal even if he did not himself file a timely removal. The problem with this argument, however, is that in their Notice of Remand, defendants stipulated that service on Mr. Martino accomplished service on Skyland Petroleum Pty Ltd f/k/a Skyland Petroleum Limited CAN 072 350 817, SPGL and SGPL. ECF No. 1 at 3.

Nevertheless, I find that the notice of removal filed on December 14, 2017 was timely as to all three defendants joining in it. I sum, I find that plaintiff's procedural arguments are unavailing, and the motion to strike and remand is denied.

### B. Motion to Dismiss, ECF No. 12.

The three defendants who join in this Rule 12(b)(2) motion claim that this Court lacks personal jurisdiction over them. To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Emp'rs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

Colorado's "long-arm" statute provides that the transaction of any business or the commission of a tortious act within Colorado, either in person or by an agent, submits such person to the jurisdiction of the courts of Colorado. C.R.S. § 13-1-124 (1)(a) and (b). The long-

11

arm statute has been interpreted to confer the maximum jurisdiction permitted by constitutional due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). The out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 U.S. 310, 323 (1945). Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958). Thus, a defendant's contacts with the forum must be such that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may be established in two ways. "General jurisdiction" exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction" exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984) (citation omitted). In such cases, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted). This inquiry "ensure[s] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the

12

forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 475).

The court may, in its discretion, address a Rule 12(b)(2) motion based solely on the documentary evidence on file or by holding an evidentiary hearing. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). Where the court rules on the motion based only on the documentary evidence before it, the plaintiff may meet its burden with a prima facie showing of personal jurisdiction. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). The court "tak[es] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged" in the complaint, and "any factual disputes in the parties' affidavits must be resolved in plaintiff's favor." *Dudnikov,* 514 F.3d at 1070.

In this case I elect to resolve the motion on the pleadings and documentary evidence before the Court. There is no suggestion of "general" jurisdiction over any of the three defendants. In terms of "specific" jurisdiction, however, plaintiff has plainly alleged, at a minimum, that SPGL entered into two contracts with Gustavson for services to be performed in Colorado, directly or through subsidiaries controlled by SPGL. Plaintiff has also alleged, and provided documentary evidence in support, that SPGL received, used and publicized the reports generated by Gustavson pursuant to those contracts. With reference to those reports SPGL announced that it had completed "its due diligence on the Mirninsky License."

The notion that SPGL could fire board members, reconstitute itself as a new or different corporation, and thereby disavow the contracts entered into by previous management strikes me

as novel, to say the least. Regardless, that "defense" goes to the merits.[1] Suffice it to say that there are sufficient allegations and documents, construed in plaintiff's favor, to constitute a prima facie showing that SPGL had minimum contracts with Colorado through its transaction of business in Colorado.

The interrelationship of SPGL and Skyland Petroleum Pty Ltd, f/k/a Skyland Petroleum Limited CAN 072 350 817, and how the latter figures in the relationship with Gustavson, is unclear to me. However, accepting plaintiff's allegations as true, essentially that the Skyland group of companies all came under common ownership and control, I am satisfied that plaintiff has alleged enough, when construed in its favor, to make a prima facie showing of personal jurisdiction as to that related entity.

Mr. Martino is a closer call. He is a frequent presence throughout the relationship between Gustavson and the Skyland group. He personally guaranteed payment of a Gustavson invoice, though not the invoice that is the subject of the breach of contract and quantum meruit claims. Plaintiff alleges that Mr. Martino acknowledged the benefits of the reports and represented that Gustavson would be paid. If plaintiff's case were limited to the contract and quantum meruit claims I probably would not find that there is personal jurisdiction as to Mr. Martino– at least not without an evidentiary hearing, in which case the plaintiff must prove facts

---

[1] Defendants assert that the two contracts at issue were between Gustavson and Skyland Management Consultancies. ECF No. 12 at 3. Defendants later in the same page suggest that the contracts were with "Skyland Management Consultancies (of Dubai) and/or Skyland Services Limited (of Guernsey). *Id.* Whether Skyland Management Consultancies or Skyland Services Limited was the contracting party is unclear to me and perhaps even to the defendants. The contracts themselves simply say "Skyland Petroleum." What is not unclear, however, is that plaintiff's allegations and exhibits provide a prima facie showing that SPGL owned and controlled both entities, and that SPGL was the recipient and beneficiary of the reports generated pursuant to the contracts. As I have noted, the ultimate resolution of those issues as well as the possible application of such clauses as the successors and assigns clause (Article 11) and the third-party beneficiary clause (Article 12) goes to the merits of the case.

supporting jurisdiction by a preponderance of the evidence. *See Oaklawn*, 959 F.2d at 174. He was not a party to the contracts, nor is an officer or director personally liable for the contracts of the company.

But this is not, at least at this point, solely a contract case. Plaintiff has asserted a number of alternative common law and statutory tort theories. Ironically, SPLG's disavowal of any contractual obligation to Gustavson breathes a little life into some of the alternative theories. A Colorado court has personal jurisdiction over an out-of-state party if that party committed a tort within the forum state or if the resulting injury occurs within Colorado. C.R.S. § 13-1-124(1)(b); *Vogan v. Cty. of San Diego*, 193 P.3d 336, 339 (Colo. App. 2008). When analyzing whether the resulting injury is targeted at or occurs within Colorado this Court applies the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). Under the "effects" test, a court may find that a nonresident defendant purposefully directed its activities at the forum state where there is evidence of (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state. *See Dudnikov*, 514 F.3d at 1072.

Based upon plaintiff's factual allegations and Mr. Martino's June 8, 2017 letter, ECF No. 10-9, he appears to have been a significant participant in, if not the primary proponent of, SPLG's disavowal of an obligation to pay the disputed Gustavson invoice. As such, he arguably could have tort responsibility for intentional interference with contract or civil conspiracy. His actions were directed at Colorado in that they were intentional and aimed at Gustavson with knowledge that the effects would be felt by Gustavson in Colorado. Accordingly, I find that, accepting plaintiff's well-pleaded allegations as true, and incorporating the documentary

evidence in the record, plaintiff has established this Court's personal jurisdiction over Mr. Martino as well as the two moving corporate defendants.

    ORDER

1. Plaintiff's motion to strike, ECF No. 15, is denied.

2. Defendants' motion to dismiss, ECF No. 12, is denied.

3. The suspension of the parties' obligation to comply with scheduling requirements of Rule 26(f), requested jointly by the parties at ECF No. 20 and granted by the Court, is lifted. Unless the parties resolve this dispute now without further litigation, (a) the moving defendants are directed to respond to the amended complaint within 21 days, and (b) the parties are directed to contact Chambers within the same 21-day period to set a Scheduling Conference as originally directed at ECF No. 8.

    DATED this 30th day of March, 2018.

    BY THE COURT:

_____
R. Brooke Jackson
United States District Judge